## BARON et al. v. UNITED STATES. *

(Circuit Court of Appeals, Sixth Circuit. February 6, 1923.)

No. 3704.

1. **Criminal Law ☞585, 622(1)—Granting of continuance or separate trials discretionary.**

The granting of a continuance or of separate trials to defendants jointly indicted rests in the discretion of the trial court.

2. **Conspiracy ☞48—Evidence held to justify submission to jury.**

In a prosecution for conspiracy to violate the National Prohibition Act evidence against a defendant *held* sufficient to justify its submission to the jury.

3. **Criminal law ☞395—Evidence found on person lawfully arrested admissible.**

To search the person of one lawfully arrested is not such an unreasonable seizure of evidence found on him as to prohibit its use on his trial.

4. **Criminal law ☞1168(2)—Failure to limit evidence to question of intent held not prejudicial.**

Where the guilt or innocence of a defendant depended solely on his intent, the admission in evidence generally of letters relating to similar transactions, instead of limiting them to the issue of intent, *held* not prejudicial.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 43 Sup. Ct. 524, 67 L. Ed. —.

**5. Criminal law ⬅168(2)—Admission of evidence held not prejudicial.**

On the trial of two defendants for conspiracy, permitting evidence originally admitted against one defendant only to be considered generally *held* without prejudice to the other defendant.

**6. Intoxicating liquors ⬅210—Indictment charging that defendants induced carrier to deliver to person not the bona fide consignee held sufficient.**

An indictment charging that defendants induced a carrier to take a shipment of liquor for delivery to a named consignee in New York, when the purpose was to have delivery made at a different place to one not the consignee, *held* to charge an offense under National Prohibition Act, tit. 2, § 16.

In Error to the District Court for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Criminal prosecution by the United States against Moe H. Baron and Hyman Barnett. Judgment of conviction, and defendants bring error. Affirmed.

E. H. Moore, of Youngstown, Ohio (Moore, Barnum & Hammond, of Youngstown, Ohio, on the brief), for plaintiffs in error.

Berkeley W. Henderson, Asst. U. S. Atty., of Cleveland, Ohio (E. S. Wertz, U. S. Atty., and Berkeley W. Henderson, Asst. U. S. Atty., both of Cleveland, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Baron was a wholesale liquor dealer in Brooklyn, N. Y., who had procured due permits to purchase whisky in Pittsburgh and ship it to Brooklyn. He withdrew from a Pittsburgh distillery warehouse 500 cases—being five truck loads—and started the transportation. Barnett accompanied the trucks as guard. When they had reached Youngstown, Ohio, on their journey to Brooklyn, the whisky was seized, and Baron and Barnett, with others, were arrested. They were later indicted, with several others, and were charged in count 6 of the indictment with a conspiracy to violate the National Prohibition Act (41 Stat. 305), by using permits for the withdrawal and transportation to Brooklyn of whisky for medicinal purposes as a subterfuge to cover the intended and actual withdrawal and shipment to Youngstown for sale there for beverage purposes. Baron and Barnett, and one other, were eventually put on trial; the others indicted were, for some reason, not brought to trial. Baron and Barnett were found guilty on three counts, including this one for conspiracy, and they separately assign error.

[1] Baron complains because the court did not grant his request for continuance, made on account of his physical and mental unfitness to go to trial. This request involved an issue of fact which was thoroughly tried out and considered by the District Judge, and the request was denied. It is entirely plain that he did not abuse the discretion vested in him on that subject. The same conclusion must be reached as to Barnett's demand for a separate trial.

[2] Barnett contends that there was not sufficient evidence to justify his conviction. The case against him is circumstantial and a verdict to the effect that his guilt was not established beyond reasonable

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

doubt might well have been hoped for; but we think the case against him was one for the jury. There was ample justification for believing that the whole expedition was for unlawful purposes. Barnett was confessedly a member of the expedition; his defense was, in a measure, one of confession and avoidance. He admitted participation as far as the transportation had gone, but he claimed he supposed it was going on to Brooklyn, in accordance with the permits. A prosecution against a man who is thus prima facie implicated rightly appeals to a jury in a light somewhat different from that which is applied to a defendant who denies any participation; it is like the possession of stolen property, which in a practical sense must be explained so as to satisfy the jury. The claim that Barnett, in good faith, believed that in going to Youngstown he was on his way to Brooklyn might very well have been accepted; but the jury, which saw Barnett and heard him testify, was not obliged to believe his statement to that effect.

Further, there was testimony tending to show that Barnett had gone to Youngstown from Pittsburgh with Baron on the occasion a few days before (not earlier than May 7; May 8 is the earliest date given), when Baron made his alleged arrangement with a Youngstown official for permission to sell in Youngstown this expected shipment; that there was about then a registration at a Youngstown hotel by "H. Lewis, Pittsburgh"; and that immediately after Barnett's arrest, he registered at the police station as "H. Lewis, Pittsburgh." These later things, by themselves, would be only suspicious circumstances which would be—we assume—unsatisfactory as the sole support of a conviction; but they tend to confirm the inferences to be drawn from the remainder of the situation, as described, and the verdict of guilty against Barnett should not be disturbed by an appellate court on this ground.

[3] After Baron's arrest he was searched, and upon him were found what seemed to be copies of several letters written by him from Pittsburgh to associates in Brooklyn during the few days before this first Youngstown trip was taken. These letters were received in evidence, and Baron and Barnett severally complain. Baron suggests violation of the Fourth and Fifth Amendments. Passing by the doubt whether the federal agents were responsible for the search and seizure, and passing by the effect of such doubt, we see no unreasonable search and seizure with resulting compulsory evidence by Baron against himself. He had been arrested, although without warrant; but there was clearly probable cause to believe him guilty of a felony. His temporary "booking" on a misdemeanor was not inconsistent. His arrest was therefore lawful, and to search the person of one lawfully arrested is not such an unreasonable seizure of evidence found on him as to prohibit its use upon his trial. 5 C. J. 401, 405, 416, 434; Weeks v. U. S., 232 U. S. 383, 392, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.[1]

---

[1] The decision of this court in Laughter v. U. S., 259 Fed. 94, 98, 170 C. C. A. 162, is not to the contrary. In that case it was not argued that Laughter's arrest had been lawful, nor was this so clearly proved as to require the court to take notice of it.

[4] Baron next complains that these letters had no harmful tendency, except to show him guilty of other offenses of the same kind; hence that they should have been received in evidence only as bearing on his intent in the matter of this indictment, while the court permitted them to be considered in a general way for whatever evidential value they might have upon the charge here made. Under the circumstances of this case, a distinction between the letters as evidence of this crime, and the letters as evidence of guilt to be inferred in this instance from other similar crimes, is academic. The letters of May 2–May 6 indicated generally that, while in Pittsburgh, Baron was either carrying on, or contemplating, or both, an unlawful traffic in beverage liquor, rather than a lawful dealing in medicinal liquor. Under the indictment on trial, nothing was in dispute except the intent. If Baron intended to sell his liquor in Youngstown, he was undeniably guilty; if he intended to take it to Brooklyn for medicinal purposes, he was entitled to acquittal. Under such circumstances, clearly developed by the undisputed testimony and the general charge, when the court permitted these letters to be received and considered as against Baron for whatever tendency they might have upon the conspiracy charge, he permitted them to be received as to Baron's intent and for no other purpose. The conspiracy was the intent and the intent was the conspiracy—assuming an overt act and an associate.

[5] Barnett complains that the letters were admitted at all, as against him, since they had no tendency to show his guilty intent. When they were first offered and received, the court expressly ruled that they were received against Baron only, and not against Barnett. In the final charge to the jury and discussion of the evidence, the jury was told that it could consider as against Barnett whatever there was in these letters tending to show a conspiracy only in case it found there was a conspiracy to which Barnett was a party. It is not quite clear where this left the matter, nor what answer there was to Barnett's claim that the letters antedated his first alleged connection with the plan; but, in any view, it is hard to see substantial prejudice as against Barnett. The evidence, which the jury doubtless believed, was conclusive as to Baron's conduct which would establish the conspiracy, if others were joined with him. It showed that, on his previous trip to Youngstown, he had arranged with the Youngstown safety director to pay him $5 per case, or $2,500, as the price of being allowed to sell the liquor there, and that on the later trip, and just before his arrest, he paid the money. It was testified for the official in question that he acquiesced in the arrangement for the sake of exposing Baron —as he did. None of this testimony was directly disputed, nor was it questioned, save by pointing out alleged discrepancies. The question as against Barnett was distinct, it related only to his participation in the plan, and the jury was carefully instructed that he could not be convicted unless it was found beyond a reasonable doubt that he did participate. The letters were only cumulative evidence of Baron's guilty intent, and it is not easy to see how Barnett would be hurt by cumulative evidence against Baron on an issue that was practically undisputed. Considering what we think the negligible probabilities

that the proof could have been of any harm to him, we cannot find prejudicial error in this respect.

According to the tendency of the evidence, after Baron had paid the bribe money to Glick, a friend of the official, and Glick had turned it over to the official, the latter went to another city officer and handed the money over, saying, in effect:

"This is some bribe money just given to me. Keep it as evidence."

A bystander was allowed to testify to this last passing over of the money, and this remark. This testimony is now criticized by counsel, as if the bystander had testified that the supposed bribe-receiving official had stated that this money had been paid to him by Glick, who told him that it had come from Baron. The record presents no such situation. The mere statement made by the official that this was bribe money, and made as he was depositing it to be kept as evidence, was an inseparable part of the transaction itself, and it necessarily and rightly came into evidence.

The evidence tended to show that Baron and Glick, about a week before the shipment, had made the arrangement by which the money was to be paid to Glick, acting for the safety director. It also tended to show that Glick, if he ever had been criminally a party to the conspiracy, withdrew therefrom before the first overt act, and thereafter only pretended to participate. At the trial Baron requested an instruction that, if the jury found that Barnett was not in the conspiracy and that Glick had withdrawn before the first overt act, then Baron could not be convicted of conspiracy, because he would remain the sole offender. It is unnecessary to consider whether this request should have been given, free from the modification which the court made, because the jury found that Barnett and Baron were conspirators, joining in an overt act, and it became quite immaterial whether Glick had withdrawn, or what would have been the right instruction, if the jury had found that Barnett was innocent.

[6] Specific objection is made to the conviction under the fifth count. This count charges that the respondents—

"did induce and give to a certain carrier intoxicating liquor * * * requiring the delivery of said liquor to Moe H. Baron at the city of New York, * * * for the purpose of enabling certain persons in Youngstown, * * * being not actually bona fide consignees, to obtain such liquor, in violation of section 16, title II, * * * of the National Prohibition Act."

The criticism made is that the statute forbids giving an order to a carrier, with the specified purpose, and that the indictment charges only giving liquor to the carrier. This is an overnice construction of the somewhat confused language of the indictment. In our judgment, to induce the carrier to take the shipment, requiring delivery thereof in New York, when the purpose was to get delivery made to persons in Youngstown, not the bona fide consignees, is to give to the carrier the order or direction contemplated by section 16. The fifth count of the indictment was good, and it was supported by the proofs.

We have examined the other errors assigned, and find nothing requiring further discussion.

The judgments are affirmed.