## UNITED STATES v. KIRSCHENBLATT.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 88.

1. **Arrest** ⬥65—**Searches and seizures** ⬥3—Entry and arrest under search warrant held lawful.

Officer's entry and arrest, made under search warrant sufficiently supported by affidavits, *held* lawful.

2. **Intoxicating liquors** ⬥249—Seizure of incriminatory documents held not warranted, under warrant to seize liquor and property designed for manufacture thereof (National Prohibition Act, tit. 2, § 25 [Comp. St. § 10138½m]).

Indiscriminate seizure of incriminatory documents *held* not warranted, under search warrant authorized by National Prohibition Act, tit. 2, § 25 (Comp. St. § 10138½m) describing property seizable as liquor, containers thereof, and property designed for manufacture.

3. **Criminal law** ⬥395—Documents and property found on person may be used in trial.

Documents and other property found on person of one arrested may be used in trial, so far as relevant.

4. **Arrest** ⬥71—Premises may be searched for contraband after arrest.

Immediate premises may be searched for contraband after arrest.

5. **Searches and seizures** ⬥3—Papers may be seized, if offending (Search Warrant Act, § 2, subd. 3 [Comp. St. § 10496¼b]).

Under Search Warrant Act, § 2, subd. 3 (Comp. St. § 10496¼b), papers may be seized, like any other property, if they offend.

In Error to the District Court of the United States for the Southern District of New York.

Proceeding by Jacob Kirschenblatt against the United States for recovery of certain papers seized under warrant to search offices. Order directing return of papers, and the United States brings error. Affirmed.

Writ of error to an order of the District Court for the Southern District of New York, directing the United States district attorney for that district to return certain papers seized by prohibition officers at the time of an arrest.

Paul, a prohibition agent, obtained a search warrant to seize and search a trunk containing liquor in the custody of the American Express Company. The affidavit on which the warrant issued alleged that he had bought some Scotch whisky at the offices of one Kirsch in New York, had ordered Kirsch to ship him under an assumed name an assortment of liquors in a trunk, and that the trunk, then on its way to the destination given, was in the custody of the express company.

The trunk was seized and found to contain the liquor ordered. A few days later one Gilbert, another agent, took out a second warrant, this time to search Kirsch's offices, where Paul had been. His affidavit recited the issuance of the first warrant and the seizure of the trunk, and concluded with a request for a general search of the premises. Gilbert and three other agents entered the offices, arrested the defendant, Kirschenblatt, and made a search. They seized a small amount of liquor and a number of Kirschenblatt's papers, of various kinds.

Kirschenblatt, having been indicted with others, brought this proceeding for the recovery of the papers so seized, and after a hearing, which added nothing to the facts above set forth, the District Court directed the return of all the papers, following the decision of this court in Kirvin v. U. S., 5 F.(2d) 282.

John M. Harlan, of New York City, for the United States.

Leo H. Klugherz, of New York City, for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1, 2] The officers' entry under the warrant was lawful, the warrant itself being sufficiently supported by the affidavits. The arrest was also lawful, so that the question is of the officers' powers to search either under the warrant, or as an incident to the arrest. The prosecution argues that the arrest gave the officers power to search the premises and seize, not only liquors and bottling apparatus, but any incriminatory papers which they found. That the search warrant did not go so far we understand to be agreed; at any rate, so much is plain. It is authorized only by section 25, tit. 2, of the National Prohibition Act (Comp. St. § 10138½m), which describes the property seizable as "liquor, the containers thereof," and "property designed for the manufacture of liquor."

While the last phrase may possibly not exclude all papers, it is plain, at least in a case like this, that the warrant would not justify the indiscriminate seizure of incriminatory documents. For this reason the argument runs that, since a person arrested may be searched, and all documents found upon him may be kept whatever their nature, and since the premises in which he is arrested may be searched for contraband as

an incident to the arrest, the search so authorized must be as broad as the search of his person.

[3] It is true that the law has never distinguished between documents and other property found upon the person of one arrested. All may be used in the trial, so far as relevant. Baron v. U. S., 286 F. 822, 824 (C. C. A. 6); Browne v. U. S., 290 F. 870, 875 (C. C. A. 6); U. S. v. Kraus (D. C.) 270 F. 579; Dillon v. O'Brien, 16 Cox, Cr. Cas. 245; People v. Chiagles, 237 N. Y. 193, 142 N. E. 583, 32 A. L. R. 676; Getchell v. Page, 103 Me. 387, 69 A. 624, 18 L. R. A. (N. S.) 253, 125 Am. St. Rep. 307; 1 Bishop, New Crim. Proc. § 211. While the point was not involved, the language in Weeks v. U. S., 232 U. S. 383, 392, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, was broad enough to cover it.

[4] Furthermore, the Supreme Court has very recently held that, upon an arrest, the immediate premises may be searched for contraband (Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145), just as a vehicle may be searched (Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790), and as officers, once in under a search warrant, are not confined to the contraband specified in it (Steele v. U. S. [No. 1] 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757; U. S. v. Old Dominion Warehouse Co., 10 F.[2d] 736 [C. C. A. 2]). This doctrine has been extended beyond contraband to incriminatory papers in two cases in the Ninth circuit. Sayers v. U. S., 2 F.(2d) 146; Marron v. U. S., 8 F.(2d) 251.

Brady v. U. S., 300 F. 540 (C. C. A. 6), is put forward as another instance; but, so far as we can learn, the only evidence used against the defendants was contraband liquor.

While we agree that strict consistency might give to a search of the premises, incidental to arrest, the same scope as to a search of the person, it seems to us that that result would admit exactly the evils against which the Fourth Amendment is directed. Whatever the casuistry of border cases, it is broadly a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him, once you have gained lawful entry, either by means of a search warrant or by his consent. The second is a practice which English-speaking peoples have thought intolerable for over a century and a half. It was against general warrants of search, whose origin was, or was thought to be, derived from Star Chamber, and which had been a powerful weapon for suppressing political agitation, that the decisions were directed, of which Entick v. Carrington, 19 How. St. Trials, 1029, is most often cited. These cases were decided just after the colonists had been hotly aroused by the attempt to enforce customs duties by writs of assistance, and when within 30 years they framed the Fourth Amendment it was general warrants that they especially had in mind. Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746.

After arresting a man in his house, to rummage at will among his papers in search of whatever will convict him, appears to us to be indistinguishable from what might be done under a general warrant; indeed, the warrant would give more protection, for presumably it must be issued by a magistrate. True, by hypothesis the power would not exist, if the supposed offender were not found on the premises; but it is small consolation to know that one's papers are safe only so long as one is not at home. Such constitutional limitations arise from grievances, real or fancied, which their makers have suffered, and should go pari passu with the supposed evil. They withstand the winds of logic by the depth and toughness of their roots in the past. Nor should we forget that what seems fair enough against a squalid huckster of bad liquor may take on a very different face, if used by a government determined to suppress political opposition under the guise of sedition.

It is likely that the admitted power to seize the fruits, or the tools, of crime, itself rests upon a very ancient basis. People v. Chiagles, 237 N. Y. 193, 196, 142 N. E. 583, 32 A. L. R. 676. At any rate, it is carefully circumscribed in the Search Warrant Act (Comp. St. § 10496¼a et seq.) itself. The pursuit of a thief on hue and cry was a civil as well as criminal remedy, and the captors retook the booty and in early times themselves did execution; the tool or other object which killed a man was deodand and forfeit; a burglar's kit or a counterfeiter's plate have never been property in the ordinary sense, any more than liquor since the enactment of section 25. Ruder times had ruder remedies, but the power to seize such chattels probably descends from notions which have long since lost their rational foundation, and, while the method has changed, the substance remains.

While the point has never been decided, the language of the Supreme Court accords with our belief that it is only such things that may be seized as an incident to an arrest. Thus, in Carroll v. U. S., 267 U. S. 132, 158,

45 S. Ct. 280, 287 (69 L. Ed. 543, 39 A. L. R. 790), the power was expressed as extending to things "which it is unlawful for him to have and which may be used to prove the offense." In Agnello v. U. S., 269 U. S. 20, 30, 46 S. Ct. 4, 5 (70 L. Ed. 145) the phrase is: "Things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things to effect an escape from custody." In Gouled v. U. S., 255 U. S. 298, 309, 41 S. Ct. 261, 265 (65 L. Ed. 647) the language is: "They"—search warrants—"may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding." It is true that the last case did not involve an arrest, but the language scarcely admits of limitation on that account.

[5] The real difficulty in the case at bar appears to us to be in the application of the last doctrine, because it is apparent that a paper may be itself the very thing against which the law is directed. U. S. v. Welsh (D. C.) 247 F. 239, affirmed 267 F. 819 (C. C. A. 2); Search Warrant Act, § 2, subd. 3 (Comp. St. § 10496¼b). As was said in Gouled v. U. S., papers as such have no sanctity, and may be seized, like any other property, if they offend. Courts have at times extended the doctrine to papers, not actually part of the criminal act, but necessary to the conduct of the venture as a whole. Dillon v. O'Brien, 16 Cox, Cr. Cas. 245; State v. Mausert, 88 N. J. Law, 286, 95 A. 991, L. R. A. 1916C, 1014; Swan v. U. S., 54 App. D. C. 100, 295 F. 921; Marron v. U. S., 8 F.(2d) 251 (C. C. A. 9). Yet, if all records of the offender's doings, such as account books or customers' lists, are to be included, there would seem to be no escape from allowing a search at large through all his papers.

It is seldom that one finds a document containing evidence of crime which was not at one time used in its commission; the papers important in any prosecution are ordinarily either communications passing between the actors or records necessary to keep track of the details. These are all that the prosecution requires, and all that, except in rare instances, it will ever get. They cannot be reached, except by a thorough search of all that the offender has, to allow which would be to countenance exactly what the amendment was designed to prevent. Therefore, while we agree that it is no answer to a search to say that papers have been seized, we cannot agree that the power extends beyond those which are a part of the forbidden act itself. It would be hazardous to attempt any definition; we shall not.

The forged note, the fraudulent prospectus, the policy slip, the written contract, if that be forbidden, the seditious broadside— perhaps all these may be contraband and subject to seizure when found on the premises. But the whole of a man's correspondence, his books of account, the record of his business, in general, the sum of his documentary property—these, in our judgment, are as inviolate upon his arrest as they certainly are upon search warrant. It is enough in the case at bar to say that the record shows no papers seized which fall within the exception.

Order affirmed.