LEFKOWITZ et al. v. UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK. *
No. 432.

Circuit Court of Appeals, Second Circuit.
Decided July 10, 1931.

SWAN, Circuit Judge, dissenting.

*Certiorari granted 52 S. Ct. 129.

David P. Siegel, of New York City (Milton B. Seasonwein, of New York City, of counsel), for appellants.

George Z. Medalie, U. S. Atty., of New York City (Ulysses S. Grant, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

These two petitioners were arrested, together with one Williams, who was later released, in room 604, at No. 1547 Broadway, New York City, January 12, 1931, by a deputy United States marshal in execution of a John Doe warrant. They were charged with maintaining a liquor nuisance and with conspiracy to violate the National Prohibition Act. Four special agents assisted in making the arrests, which are to be treated as having been made lawfully.

Room 604 was on the sixth floor of a building at the above address, and was about ten feet wide and twenty feet long. It was divided by a partition into a front office and a back office, and used ostensibly by a real estate agency. At the time the men were arrested, Pauline Paris, who was employed as a typist in the office, was not present, but came in soon afterwards and was immediately placed under arrest. When they were arrested, the men were searched. Various papers were taken from the person of Lefkowitz and delivered to the United States attorney, who now has possession of all of them except what he has consented to return. A small bottle of whisky was taken from Williams.

Contemporaneously with the arrests, both rooms were thoroughly searched. Two desks were opened, ransacked, and papers they contained seized; a towel cabinet was searched and papers in it seized; waste paper baskets were emptied and scraps of paper taken from them and later pasted together. All that was seized after this search was delivered to the United States attorney, who now has possession of so much thereof as he has not seen fit to return.

After she was arrested, Pauline Paris was told by one of the officers that he would try to procure her release on bail and thus make it unnecessary for her to remain in jail over night if she would write on her typewriter a letter he would dictate and place her signature upon it. She readily consented to do so, and the following letter was written.

"Ulysses Grant, Post Office Bldg., New York City

"My dear Mr. Grant, Since everything has gone fine, I would suggest that this girl whose name is signed below be left out as soon as bail is arranged for her.

"Very truly yours,

"J. Ray Oliver.

"[s]   Pauline Paris"

It was entirely in typewriting, except the name Pauline Paris, which was in her handwriting. The officer intended to, and did, facilitate her release on bail, but his primary purpose in having the letter written was to obtain a sample of her work on that typewriter and her signature.

One of the two desks searched was in each office into which the room had been divided. In the desk in the back office a small bottle partly filled with alcohol was found and seized. No other intoxicating liquor was discovered except that which Williams had. The search and seizure was made without a search warrant, and is claimed to have been lawful as an incident of the arrests.

Although this case differs from United States v. 1,013 Crates of Empty Old Smuggler Whiskey Bottles, etc., 52 F.(2d) 49, just decided by this court, in that this comes up on appeal from the denial of an application for the suppression and return of evidence seized while the appeal in that case was from a decree on a libel for forfeiture of contraband, the right to search and seize as an incident of a lawful arrest is, here as there, alone relied upon by the government in justification.

As is so well shown in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, the right to search for and seize contraband when it is done lawfully is utterly unlike a search for evidence merely and the seizure of one's private books and papers for the sole purpose of using them for purposes of incrimination. Without confusing a search for and seizure of contraband of which the government is entitled to take possession because of what in law is said to be the inherent guilt of the res itself and the search for and seizure of books, papers, doc-

uments and the like which are not, at least as yet, considered guilty themselves, but are only wanted to prove the guilt of persons or property, it is needless to emphasize that searches and seizures of both kinds must always be reasonable to be lawful. Whenever evidence is searched for and seized, it must be in connection with something else which gives to the public a paramount interest in it. Gouled v. United States, 255 U. S. 298, at page 309, 41 S. Ct. 261, 65 L. Ed. 647. This happens when it is done as an incident of a lawful arrest or a lawful seizure of contraband, but a search and seizure cannot be reasonable, and therefore justified, if it is based solely on the purpose to obtain nothing but information generally which may, perhaps, be proof that a crime has been committed. Evidence so obtained is not admissible against the person or persons whose rights have been violated. To admit it would be contrary to the Fifth Amendment in that part which reads "no person * * * shall be compelled in any Criminal Case to be a witness against himself." Boyd v. United States, supra; Gouled v. United States, supra. Consequently, when a seizure of contraband is defended as an incident of a lawful arrest, as in United States v. 1013 Crates, etc., supra, or a seizure of evidence is defended on the same ground, as in this case, the reasonableness of the search which resulted in the seizure is the test of legality in each instance.

The application of this principle to the present case results at once in dividing the property seized into two classes—that which was taken from the person of petitioner Lefkowitz when he was arrested and searched; and that which was seized when the office and its furniture were explored for evidence.

The things that were found on Lefkowitz were lawfully seized and may be used against him. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; United States v. Kirschenblatt (C. C. A.) 16 F.(2d) 202, 51 A. L. R. 416. The law on this subject has long been so well settled that it is useless to do more than state it whenever occasion arises. It is difficult to conceive how the facts in one case can make it differ from others in this respect, and such a search properly conducted is reasonable as a matter of law.

What was seized in the search of the offices falls within the second class, and the application of the governing legal principles to whatever such searches and seizures may be made may lead to different results as circumstances may differ. It comes right down to what may be reasonable in fact. There are, however, certain fixed boundaries which may not be transgressed. One of these, and the only one we need to mention now, is the firmly rooted proposition that what are called general exploratory searches throughout premises and personal property are forbidden. It does not matter whether the premises are comparatively large or small, whether the articles of personal property opened and the contents examined are numerous or few, the right of personal security, liberty and private property is violated if the search is general, for nothing specific, but for whatever the containers may hide from view, and is based only on the eagerness of officers to get hold of whatever evidence they may be able to bring to light. The legal principles which protect all men equally loom as large at one time as at another, and forbid the search and seizure. Such a search and seizure as these officers indulged themselves in is not like that in Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231, where things openly displayed to view were picked up by the officers and taken away at the time an arrest was made. The decision that does control is Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374. Indeed, this case differs in its essential facts from that one so slightly that what is said in that opinion in characterizing the search made will apply with equal force to this one, which must accordingly be held unreasonable.

The only other paper to be dealt with is the letter typed by Pauline Paris. She acted voluntarily and with the knowledge that it was to go to the assistant United States attorney to whom it was written. That the officers wanted it for an undisclosed purpose seems less than enough to require its suppression now. What Judge Hough said in United States v. Maresca et al. (D. C.) 266 F. 713, 718 (5), may have been limited somewhat by Gouled v. United States, supra, but we do not understand that one who willingly writes a letter to another is entitled to have it suppressed on motion simply because it may be used not only for what the writer intended, but for some other purpose not then foreseen. And this is so, even though an agent of the government instigated the writing well knowing that it might be used in a way the writer did not suspect. If what was done may be said to be the equivalent of obtaining

a confession by fraud or a promise of favor, a matter we do not now either suggest or consider, whatever rights this petitioner may have can all be amply protected by objection if the letter is ever offered in evidence. As the papers seized may be admissible in evidence against others, the petitioners are not entitled to their return now. See In re Dooley (C. C. A.) 48 F.(2d) 121. They are sufficiently protected for the present by having suppressed what was seized unlawfully as to them.

Except as to what was obtained in searching the person of Lefkowitz and as to the letter written by Pauline Paris, the order is reversed, with directions to enter an order in conformity with this opinion.

SWAN, Circuit Judge (dissenting).

It is settled law that an officer making a lawful arrest may lawfully search property and premises within the prisoner's immediate control, as well as the prisoner's person, in order to find and seize the things used to carry on the criminal enterprise. Agnello v. United States, 269 U. S. 20, 30, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Carroll v. United States, 267 U. S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Marsh v. United States, 29 F.(2d) 172 (C. C. A. 2); Appell v. United States, 29 F.(2d) 279 (C. C. A. 5); United States v. Kirschenblatt, 16 F.(2d) 202, 203, 51 A. L. R. 416 (C. C. A. 2). The case of Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231, applied the principle to include documents and papers used in connection with the crime of maintaining a nuisance in violation of the Prohibition Act (27 USCA). See, also, United States v. Poller, 43 F.(2d) 911 (C. C. A. 2); Sayers v. United States, 2 F.(2d) 146 (C. C. A. 9); Browne v. United States, 290 F. 870 (C. C. A. 6); United States v. Durkin, 41 F.(2d) 851 (D. C. M. D. Pa.); United States v. Wilson, 163 F. 338 (C. C. S. D. N. Y.). The papers seized are listed in the record, and items 2, 3, 4, and 10 do not appear to have any relation to the crime with which Lefkowitz was charged. The other items, however, business cards, notebooks, lists of names, etc., apparently used in connection with the illegal conspiracy, were, I believe, validly seized.

The cases above cited would seem to justify the search and seizure made by the officers within the small rooms occupied by the prisoner when arrested in the case at bar. Nor do I read the opinion of the Supreme Court in the recent Go-Bart Case, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374, as laying down a contrary rule. There the search was deemed unreasonable because of fraud and threats of force by means of which the officers gained access to the locked desks and safe. Here there was nothing of that sort. The cases involving searches of premises incidental to an arrest contain no intimation that the search may not be a thorough one for things concealed. But even if some of the papers were obtained by an unreasonably extensive and exploratory search for documents not open and visible, I think the court would be required to differentiate between the papers thus obtained and those which were within the principle of a reasonable search incidental to a lawful arrest. Because some papers were illegally seized, it does not follow that those lawfully taken must also be returned. In my opinion the order should be affirmed except as to the four items above mentioned as unrelated to the crime.