**Joseph Daniel HOLT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9859.**

United States Court of Appeals
Tenth Circuit.

Sept. 16, 1968.

Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 872.

**916**

H. A. Leatherman, Oklahoma City, Okl., for appellant.

John E. Green, Asst. U. S. Atty., for appellee (B. Andrew Potter, U. S. Atty., was with him on the brief).

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant was tried to a jury and convicted of the unlawful possession of counterfeit money in violation of 18 U.S.C. § 472. Judgment was entered upon the jury verdict and sentence was pronounced from which this appeal was taken.

The three points made here all go to the admission of evidence during the course of the trial. Appellant contends: (1) that certain evidence obtained from his person at the time of his arrest was obtained through an illegal search and seizure and should have been excluded; (2) that a tape recording of a conversation had with an informant shortly before this arrest was obtained pursuant to an unreasonable search and seizure and should likewise have been excluded; and (3) that certain palm-fingerprint evidence should not have been admitted because it was obtained from a previous trial of appellant on a different counterfeiting charge and one in which the court had directed a verdict of "not guilty" in favor of appellant.

Appellant was arrested without a warrant on June 14, 1967, at the Will Rogers World Airport, Oklahoma City, Oklahoma by Special Agent Copeland of the United States Secret Service for possession of counterfeit money. Upon searching the appellant, Agent Copeland uncovered a package containing 150 counterfeit $100.00 Federal Reserve Notes. It is the admission of these notes into evidence that appellant asserts as one of the errors on appeal.

The circumstances surrounding the arrest are that an informant had arranged to purchase counterfeit money at a meeting to be had with the appellant at the airport in Oklahoma City. The informant having been in contact with the Secret Service, a team of such agents began their surveillance of appellant approximately one week before the contemplated meeting. On the morning of the arrest the informant met with agents in Dallas, Texas, where a miniature electronic recording device was concealed on his person. The informant was also searched at that time and no counterfeit currency was found. Shortly thereafter, in the company of Agent Edward Moore,

the informant boarded an airplane for the flight to Oklahoma.

Contemporaneously with the activity in Dallas, the agents conducting the surveillance of the appellant in Oklahoma, convened at the airport. Upon the arrival and deboarding of the informant and Agent Moore, each agent was stationed at a strategic location within the terminal building of the airport. The informant went into the airport coffee shop where he was observed in conversation with the appellant. This conversation was overheard in part by other agents listening over a receiver that had been set up to receive the transmissions of the recording device carried by the informant. The two men then separated, whereupon the informant stated to one Agent McWerthy that "he's in the phone booth and he's got it on him." This information was relayed to other agents who in turn relayed this fact to Agent Copeland who made the arrest and search at issue here.

During the trial the Government presented the testimony of the various Secret Service Agents involved. The cumulative effect of this testimony was to establish the facts as set forth above. After the Government rested its case, appellant testifying in his own behalf, related the facts of various previous criminal convictions involving assorted illegal acts. Appellant also testified that the informant had given him the money to finance the purchase of used automobiles and that he was unaware that the money was counterfeit. On rebuttal the informant related his role in the case and flatly denied having given the money to appellant. It was at this time that the tape recording of the airport conversation between the informant and appellant was played in open court to the jury. It is admitted that this recording was largely unintelligible and inaudible. Appellant assigns as his second basis of appeal, the admission of this recording into evidence.

The Government then proceeded to introduce palm-fingerprint evidence that had been withdrawn from a criminal trial in a Texas court involving the appellant in a similar counterfeiting charge. Because that trial had previously resulted in a directed verdict in favor of the appellant, he assigns as his third and final ground for appeal, the admission of that evidence.

The search of appellant and the seizure of the counterfeit money were undertaken without the authority of a search warrant and therefore the counterfeit money was admissible into evidence only if it was seized as the result of a search incidental to a lawful arrest.[1]

■■ The Secret Service is empowered to effectuate a lawful arrest without a warrant only if there is "reasonable grounds to believe that the person to be arrested has committed or is committing" a felony. 18 U.S.C. § 3056. "Reasonable grounds" as used in that statute and "probable cause" as used in the Fourth Amendment are substantially equivalent.[2] Thus, the ultimate question determining the propriety of the evidentiary allowance is one of probable cause.

■ This court has "grudgingly sanctioned interception and apprehension of a moving vehicle or person and the search of such vehicle or person for contraband if the enforcement officer has probable cause to believe that the law is being violated in his presence and it is then impractical to secure a warrant."[3] Because counterfeit currency is contraband, the mere possession of which is unlawful, the appellant was committing

---

1. Taylor v. United States, 334 F.2d 386, 388 (10th Cir. 1964) and citations therein.

2. Both parties agree that the analogy furnished by Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), wherein "reasonable grounds" as defined in the Narcotics Control Act was equated with the "probable cause" of the Fourth Amendment, is clearly controlling.

3. United States v. One 1957 Ford Ranchero Pickup Truck, 265 F.2d 21, 23 (10th Cir. 1959). See also, Anderson v. United States, 399 F.2d 753 (10th Cir. 1968).

a continuing felony as long as he possessed the counterfeit money. Hence, if the arresting agent had probable cause to believe such felony was being perpetrated, the arrest was proper. The Government, seeking to establish probable cause, relies upon the reliability of the informant as established by his previous dealings with the Secret Service; the corroborative effect of the appellant's appearance at the airport; and the fact of the observance by the arresting officer of a bulge in the appellant's clothing which revealed a brown paper bag wrapped around "something white" exposed through a torn corner of the bag. Appellant contends that the admitted inability of the officer to recognize the contents of the paper bag as counterfeit currency until after a detailed examination had been conducted, reflects a lack of corroboration of the informant's statement, thereby negating the existence of probable cause.

█ It was established in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), that to constitute probable cause for an arrest it must be shown at the time the officer makes the arrest that the facts and circumstances within his knowledge and of which he has reasonably trustworthy information, are sufficient to warrant a prudent man in believing that an offense has been or is being committed. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." [4] In order to further this policy of accommodating competing policies, courts have allowed statements by a credible informant to constitute the nucleus of the requisite probable cause. In Jones v. United States, 362 U.S. 257,

269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960), the court, citing Draper, stated: "[W]e have held that [the arresting officer] may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." In Draper, the "other matters within the officer's knowledge" were that a reliable informant had indicated that the defendant, who was adequately described, would arrive at a particular place, at a specific time, and would be carrying narcotics. Upon the officer's observation of a man meeting the description given by the informant, the valid arrest was consummated. Similarly, in McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) the statement of a known informant that the defendant would be at a specific place at a given time was held sufficient probable cause to sustain the subsequent arrest.

█ In the case at bar the Secret Service agents testified that the informant had provided reliable "tips" in the past. It was also shown that he correctly stated that the appellant would be in the airport at the particular time in question. Consequently, here as in Draper, a reliable informant has indicated that the appellant, who was adequately described, would arrive at a particular place at a specific time, and would be carrying contraband. But here there was even more. Once having conversed with the appellant and being satisfied that he possessed contraband, the informant notified an agent who relayed the information to the arresting officer who in observing the appellant noticed a torn brown sack bulging from the latter's pocket. It is well settled that an agent may rely upon his fellow officers to supply the information which forms the basis of the arresting officer's reasonable grounds for believing that the law

---

4. Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964), citing Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

See, Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968).

is being violated. Hence, the fact that the informant's reliability and his statement that appellant was carrying the currency were provided through the statements of the arresting officer's colleagues, is not determinative. Nor is the inability to identify the currency as counterfeit prior to the arrest sufficient to invalidate it. It is not necessary that the officer possess knowledge of facts sufficient to establish guilt, all that is required is knowledge that would furnish a prudent man with reasonable grounds for believing a violation had occurred.[5] This being so, the search and seizure was valid as an incident to a lawful arrest and the evidence seized was clearly admissible.[6]

Appellant next contends that it was reversible error to allow the tape recording of his conversation with the informant to be played in open court to the jury. This assertion is based upon the recent case of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1968), which held it to be an unreasonable search and seizure for federal agents, using an electronic eavesdropping device, to listen and record the defendant's end of a telephone conversation made from a public phone booth.[7] Appellee counters by urging a distinction between the facts of Katz and those presented here.

██ We agree that Katz is not controlling under the circumstances in this case. Here the informant testified as to the "bugged" conversation with the appellant. The tape recording was then admitted into evidence to corroborate this testimony. It is conceded by appellant, as indeed it must be, that the testimony

of the informant was clearly admissible. See Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). Thus, in the words of Mr. Justice White, concurring in Katz: "When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he heard." From this basic premise, White, J., concluded that: "It is but a logical and reasonable extension of this principle that a man takes the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another."

The distinction, then, between this case and Katz, is that in the latter the eavesdropping occurred when Government agents listened in on the defendant and another unsuspecting third party. Here the eavesdropping was merely the corroboration of a conversation between the appellant and a Government informant. The eavesdropping thus stands in the stead of the informant and is admissible on the same basis as is the testimony of the informant. This proposition was made clear in Katz when White, J., referred to Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963) as remaining undisturbed by the decision in Katz. In Lopez a concealed instrument on the person of a Government agent recorded a conversation between him and the defendant. Admission into evidence of the recording to corroborate the testimony of the agent was upheld.

5. The assertion that absent knowledge that was sufficient to prove the currency as counterfeit, there could not be probable cause reflects confusion between the requisites for showing guilt and the requirements for probable cause. "There is a large difference between the two things to be proved * * * and therefore a like difference in the quanta and modes of proof required to establish them." Draper v. United States, 358 U.S. at 312, 79 S.Ct. at 332.

6. McCray v. State of Illinois, supra; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Draper v. United States, supra; and Taylor v. United States, supra.

7. With regard to the general problem of electronic surveillance see Standards Relating to Electronic Surveillance, ABA Advisory Committee (Tent. Draft 1968).

In Dancy v. United States, 390 F.2d 370 (5th Cir. 1968), the issue concerned the testimony of a Government agent regarding a conversation had between an informant and the defendant and overheard by the Government agent. The informant, having been outfitted with an electronic transmitter, entered the defendant's apartment, purchased narcotics and returned to the nearby station of the eavesdropping Government agent. The court held that the testimony was admissible because the case was not controlled by Katz but rather by Lopez and Long v. United States, 387 F.2d 377 (5th Cir. 1967). The reasoning in Dancy applies here inasmuch as the factual setting of that case and the case at bar are clearly indistinguishable. We conclude that the present case deals with an entirely different situation than existed in Katz. It remains the law that the recording of a conversation between an informant and a suspect, obtained through an electronic device concealed upon the person of the informant under circumstances such as exist in this case, is admissible into evidence. See Lopez v. United States, supra; On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Dancy v. United States, supra; and Long v. United States, supra.

Appellant's final contention relates to the admission of the palm-fingerprint evidence. This evidence had been obtained from the record of a previous criminal trial in a Texas court which had resulted in a directed verdict in favor of the appellant.

It is well settled that, in a counterfeiting case, evidence of passing or attempting to pass similar counterfeit notes on other occasions is admissible on the question of the defendant's criminal intent which is indispensable to proof of the offense. United States v. Leitner, 312 F.2d 107 (2nd Cir. 1963);

Marson v. United States, 203 F.2d 904 (6th Cir. 1953); Carrulo v. United States, 184 F.2d 743 (8th Cir. 1950); and York v. United States, 241 F. 656 (9th Cir. 1916). In addition, this court has often ruled that such evidence of other acts is admissible if so related to the crime charged as to indicate motive or intent. Rothering v. United States, 384 F.2d 385 (10th Cir. 1967); Morgan v. United States, 355 F.2d 43 (10th Cir. 1966); and Tandberg-Hanssen v. United States, 284 F.2d 331 (10th Cir. 1960). Appellant, however, would distinguish the present situation because the evidence of the passing of similar counterfeit notes was introduced into a previous trial; and it was there found to be inconclusive as is indicated by the directed verdict therein. But evidence of similar acts is admitted merely for the purpose of establishing intent as to the charge then under consideration; it is not admitted to establish or disestablish the existence of a criminal violation based solely upon the previous act. Thus, whether the previous similar act was criminal in character or not;[8] or if criminal, whether there were separate criminal charges based thereon or not, and regardless of the outcome of those charges, the evidence is admitted to allow the jury to consider it in an effort to ascertain the existence of intent as an element of the present crime charged. The directing of a verdict is a negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt. It does not preclude using evidence to assist in demonstrating intent as to a subsequent independent act. It is conceded by appellant that the jury was correctly instructed as to the proper consideration to be given to the palm-fingerprint evidence; hence, there was no error in its admission and appellant's final contention on appeal must fail.

Affirmed.

8.  United States v. Chase, 372 F.2d 453 (4th Cir. 1967); Kowalchuk v. United States, 176 F.2d 873 (6th Cir. 1949); Benchwick v. United States, 297 F.2d 330 (9th Cir. 1961).