**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dana Bruce SIMPSON, Defendant-**
**Appellant.**

**No. 71–1206.**

United States Court of Appeals,
Tenth Circuit.

Jan. 5, 1972.

Rehearing Denied Feb. 10, 1972.

McWilliams, Circuit Judge, dissented and filed opinion.

John J. Immel, Asst. U. S. Atty., Wichita, Kan. (Robert J. Roth, U. S. Atty., Wichita, Kan., on the brief), for appellee.

G. G. Alan Vaughan, Denver, Colo., for appellant.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Simpson was convicted by jury of willfully, knowingly and unlawfully having in his possession a Selective Service Certificate and Classification Card issued to another for the purpose of establishing identity in violation of 50 App. U.S.C. § 462(b) (2). He was sentenced to five years imprisonment.

On August 20th or 21st, 1970, Simpson met Brian R. Loveless in a parking lot in Wichita, Kansas. Simpson asked Loveless for some identification so he could obtain reduced airplane rates available to students, in anticipation of a flight to California. Loveless loaned him identification which included his Selective Service Certificate and Selective Service Classification Card.

Simpson was arrested on September 2, 1970 pursuant to an arrest warrant issued upon an affidavit of Jesse Gragg, Special Agent for the Kansas Bureau of Investigation. The warrant charged Simpson with possessing and transporting explosives to be used to commit a crime in violation of Kansas Statutes Annotated, 1969 Supp., 21–3731 and creating a hazard with explosives under K.S.A. 21–4212. At the time of the arrest Hobart Auer, Detective with the Sedgwick County Sheriff's Office, searched Simpson. He found a tear gas gun in his back trouser pocket. He found $130.00 in his pockets. He also found a wallet containing Loveless' Selective Service Certificate and Classification Card. Simpson moved to suppress the evidence seized from his wallet as a result of an illegal arrest and search. The trial court found the arrest to be legal and held that the subsequent search of Simpson's person was incidental to the arrest.

Simpson contends on appeal that: (1) the arrest warrant was not supported by a sufficient affidavit; (2) the search of his wallet incident to arrest constitutes an unreasonable search and seizure under the Fourth Amendment; and (3) the Government did not fulfill its burden of proof following his presentation contending that the evidence was tainted.

■■ Simpson alleges that the affidavit supporting the arrest warrant was not sufficient because it was based wholly on hearsay which does not relate adequate information to establish the informant's reliability. Simpson contends that the search and seizure which followed were illegal because of the illegal arrest. The affidavit must reflect the direct personal observations of the affiant, or, if based on hearsay, the underlying circumstances must be related to the magistrate to establish the reliability of the informant and the fact that a crime was committed. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d

723 (1964); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

"In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Jones v. United States, 362 U.S. 257 at 269, 80 S.Ct. 725, at 735, 4 L.Ed.2d 697 (1960).

Any affidavit must be tested by the courts in a commonsense fashion and technical requirements have no proper place in this area. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The purpose of the affidavit is to allow the magistrate to determine whether probable cause exists to support a warrant. Giordenello v. United States, *supra*.

The arrest warrant for Simpson was founded on the affidavit of Jesse Gragg, Special Agent for the Kansas Bureau of Investigation. Gragg received hearsay information from John Savino, Mark Thomas, Mike Miller and Kevin Kness that Simpson had dynamite in his possession and had stored it at a particular location in Wichita, Kansas. Gragg was told by them that Simpson intended to "blow up" the National Guard Armory in Lawrence, Kansas. Gragg went to the address he was given and found the dynamite. Subsequently he presented his affidavit upon which the arrest warrant was issued.

■ The affidavit here was not based wholly on hearsay because the informants' reliability was established by Gragg when he found the dynamite where they said it was located. Thus, Gragg had personally corroborated the information relayed. The affidavit was sufficient standing alone. The magistrate properly concluded that there was probable cause for issuance of the arrest warrant.

■■ Simpson's argument that the search of his wallet was unreasonable is without merit. The Fourth Amendment secures people, their persons, houses, papers and effects against unreasonable searches and seizures. When a search of the person arrested is conducted incidental to a lawful arrest it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). A search incidental to a valid arrest may have as one of its purposes the discovery of objects or things which constitutes evidence that the person arrested has committed a crime. Pinelli v. United States, 403 F.2d 998 (10th Cir. 1968); Malone v. Crouse, 380 F.2d 741 (10th Cir. 1967), cert. denied 390 U.S. 968, 88 S.Ct. 1082, 19 L.Ed.2d 1174 (1968); Stone v. United States, 385 F.2d 713 (10th Cir. 1967), cert. denied 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968).

"The probable cause that is required to sustain the search is the same whether the purpose of the search is to uncover weapons, mere evidence or any of the other categories of permissible objects." *Pinelli, supra*, 403 F.2d at 1000–1001. See also Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Holt v. United States, 404 F.2d 914 (10th Cir. 1968), cert. denied 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779 (1969).

The law does not distinguish between documents and other items found on the person arrested. All of the seized items may be admitted in evidence if determined to have probative value in relation to the commission of crime. United States v. Kirschenblatt, 16 F.2d 202 (2nd Cir. 1926).

"While we agree that strict consistency might give to a search of the premises, incidental to arrest, the same scope as to a search of the person, it seems to us that that result would admit exactly

the evils against which the Fourth Amendment is directed. Whatever the casuistry of the border cases, it is broadly a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him, once you have gained lawful entry, either by means of a search warrant or by his consent. The second is a practice which English-speaking peoples have thought intolerable for over a century and a half." United States v. Kirschenblatt, *supra*, at 203.

The general rule is that incident to a lawful arrest, a search without a warrant may be made of portable personal effects in the immediate possession of the person arrested. The discovery during a search of a totally unrelated object which provides grounds for prosecution of a crime different than that which the accused was arrested for does not render the search invalid. Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967), cert. denied 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968); Massey v. United States, 358 F.2d 782 (10th Cir. 1966), cert. denied 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (1966); Cook v. United States, 346 F.2d 563 (10th Cir. 1965). Thus when Simpson's wallet was searched it was done incident to a lawful arrest and even though incriminating objects unrelated to the offense for which he was arrested were discovered, the search was valid. The incriminating Selective Service Certificate and Classification Card were admissible in evidence in the instant prosecution. We observe that although the general rule approved here does not require specific justification on a case-to-case basis, we take notice that knives and other small weapons can be secreted in wallets and that cards and addresses may disclose names of those who may have conspired with the person searched in the commission of the crime charged.

Simpson also alleges that the Government did not meet its burden of proof following his presentation in support of his contention that the evidence was tainted. He argues that once he raised the issue and presented evidence of taint through unreasonable search and seizure or invalid arrest, the burden of establishing constitutionality was on the prosecution. Simpson raised the issue of unlawful search of his wallet by motion to suppress. The motion to suppress was heard by the Court before trial. The Court ruled adversely to Simpson before the Government could respond. Matters of defense must be proven by a defendant. Since Simpson failed to prove that the search of the wallet was illegal, the burden did not shift to the Government. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

We conclude that the trial court did not err.

We affirm.

McWILLIAMS, Circuit Judge (dissenting).

I respectfully dissent. I agree with the majority that the affidavit was sufficient to justify the issuance of the arrest warrant. Accordingly, the argument that the search of Simpson's wallet was invalid because he was unlawfully arrested is without merit. My problem with this case is that I find nothing in the record which would justify the conclusion that the search of Simpson's wallet was reasonable.

I recognize that under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) it is reasonable for the arresting officer as an incident to a lawful arrest to search the person thus arrested for weapons with which the arrest might be resisted and also to search his person for evidence which might be concealed or destroyed. However, *Chimel* recognized that there are Fourth Amendment limitations even on a search incident to a lawful arrest and in so doing the Court reemphasized the language from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that the *scope* of such search must be

"strictly tied to and justified by the circumstances which rendered its initiation permissible." *Terry* in turn noted that a search which is reasonable in its inception may violate the Fourth Amendment by virtue of its "intolerable intensity and scope." And it is the scope of the present search which gives me concern.

See also in this regard, United States v. Humphrey, 409 F.2d 1055 (10th Cir. 1969), where we reviewed many of the pre-*Chimel* cases bearing on this matter and concluded as follows:

> ". . . [I]t is clear that the scope of a search contemporaneous with a legal arrest must have a reasonable relationship to the protection of the officer or the crime for which the accused was arrested . . . ."

I do not view our pronouncement in *Humphrey* to be in any manner at odds with *Chimel* and, on the contrary, believe *Humphrey* to be in accord with the rationale of *Chimel*. And the United States Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, at page 482, 91 S.Ct. 2022, at page 2046, 29 L.Ed.2d 564, made reference to *Chimel* as follows:

> "To begin with, in Chimel v. California, supra, we held that a search of the person of an arrestee and of the area under his immediate control could be carried out without a warrant. We did not indicate there, and do not suggest here, that the police must obtain a warrant if they anticipate that they will find *specific evidence* during the course of such a search." (Emphasis added.)

As indicated, I am unable to determine from the record before us what prompted the arresting officer to search Simpson's wallet. Certainly there is nothing in the record to indicate that the arresting officer had reasonable grounds, as he must have under the Fourth Amendment, to believe that either a weapon was concealed in the wallet or that the wallet contained evidence pertaining to the crime for which Simpson was being arrested, namely, the unlawful possession, some two weeks prior to his arrest, of dynamite, in violation of Kansas law. Such may conceivably be the case, but there is nothing before us to indicate that it was one or both of those reasons that prompted the arresting officer to thumb through the identification cards in Simpson's wallet.

I recognize that at the hearing on the motion to suppress neither the Government nor Simpson put on any evidence to develop the facts and circumstances surrounding the search. Rather, the argument in the trial court centered on the sufficiency of the affidavit which formed the basis for the issuance of the arrest warrant. Simpson, however, also contended that even though the arrest be deemed lawful, the ensuing search of his wallet was not. In this regard, the trial court indicated that the search of the wallet was perhaps a reasonable effort to identify the person arrested. However, there is nothing in the record to indicate that there was any identification problem.

In any event, I would remand the matter to the trial court with directions that it hold, even at this late date, a full-scale hearing on the motion to suppress, permitting the parties to call such witnesses as each desires. If, after such hearing, the trial court be of the view that the motion to suppress was properly denied, then the judgment and sentence should be permitted to stand, subject to our right to review on the record as thus made the propriety of the trial court's denial of the motion to suppress. If, however, after such hearing the trial court concludes that the motion to suppress should have been granted, then the judgment and sentence should be vacated and the case dismissed, as it is difficult to fathom how the Government could prosecute the case without the use of the Selective Service card belonging to Loveless but found in Simpson's wallet.