113 N.J. Super. 120 (1971)
273 A.2d 68
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILBERT SMITH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1970.
Decided January 19, 1971.
*122 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. Edward Weisslitz, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Gerard J. DiNicola, Salem County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by CONFORD, P.J.A.D.
Defendant appeals from a conviction for possession of marijuana. Arresting officers found a mailed package of marijuana in his car and an incriminating letter in his bedroom. Inter alia, a number of search and seizure questions are presented.
The judge who later tried the case issued a warrant to search defendant's home on August 19, 1968. This warrant, which authorized a search for "narcotics and narcotics paraphernalia," was executed August 28, 1968, and defendant was *123 arrested at his home at the same time pursuant to an arrest warrant dated that day for possession of marijuana. A motion to suppress the package and the letter (and part of an envelope) was heard and denied in advance of the trial.

FACTS PERTINENT TO SEARCH ISSUES
Except where otherwise indicated the facts here stated were elicited at the trial rather than on the hearing of the motion to suppress.
A short time prior to August 19, 1968 Detective Charles Croce of the New Jersey State Police received information from the United States Bureau of Customs that during a routine examination of packages mailed from Vietnam their agents had discovered a package containing marijuana addressed to defendant Wilbert Smith, 319A Springfield Avenue, Penns Grove, New Jersey. Control of the package was assumed by the customs authorities, acting in cooperation with the postal authorities. The package reached the Penns Grove Post Office on August 15, 1968 and was at once examined by Detective Croce to determine the contents. He was satisfied that it was marijuana.
On August 19, 1968 Detective Croce made application for a search warrant for the Smith home. His supporting affidavit averred that he was experienced as a narcotics investigator and that he had "probable cause" to believe that Smith was in possession of "Marihuana" [sic] at the premises in question. His belief was rested on information from federal customs and postal officers (named) that a package containing the drug was mailed August 6, 1968 from the Far East, purportedly by one SP/4 B. Brown, with an indicated serial number, addressed to Smith at said premises; that Croce personally examined a sample of the contents and believed it to be marihuana [sic], and that a customs officer had informed him that examination of the substance by federal authorities had determined it to be such. (Testimony at the trial was to the effect that an investigation showed there was no such person as SP/4 B. Brown with the specified *124 serial number.) A warrant in the tenor noted above issued the same day  August 19, 1968  to search defendant's one-story residence.
An effort by local postal personnel to deliver the package to defendant on August 19 (after issuance of the warrant) failed because defendant and his family were on vacation. A slip was left at the house notifying defendant to pick up the article at the post office (the package being registered). After another abortive effort by the officials to effect delivery, defendant finally obtained possession of the package on August 28, 1968 under the following circumstances. At the motion hearing defendant testified that on August 27, 1968 he received a notice to pick up the package. On August 28, 1968 he asked a fellow-employee, Baylor, to pick up the package for him as defendant's work shift did not end prior to the postoffice closing hour. Trial testimony disclosed that the police maintained surveillance as Baylor picked up the package and followed him to his home. The police obtained Baylor's cooperation, and waited in and near his home for defendant's arrival. Defendant came and received the package from Baylor. He was seen to place the package in the trunk of his car. The police followed him home in the course of a journey during which he did some shopping and placed the purchases in the car (not the trunk). The police were unable to ascertain whether or not defendant brought the package into the house from the car on arrival.
On the motion to suppress, defendant testified that he had placed the package in his car trunk after obtaining it from Baylor, and that he did not open the package and was ignorant of its contents. He was in his house when the police officers knocked on the door. Defendant's wife answered the door, whereupon the police officers identified themselves and stated their belief that defendant had narcotics in his possession. They then informed defendant that they had a search warrant and read it to him. However, he was not advised of his rights nor placed under arrest. The police asked him where the package was and he told them it was *125 in the car trunk. They asked, "did [he] mind getting it, and [he] told them no, [he] didn't mind," because he thought the search warrant covered the car. He opened the trunk and gave them the package. Upon returning to the house they asked him if he had "any personal papers." He responded affirmatively, and they went into his bedroom and "went through the personal papers and what not." They took a letter, and a torn piece of an envelope from another letter from the same sender. The letter was from one P.F.C. Burton Domenick in Vietnam.[1] Defendant could not recall whether the letter was opened or sealed when taken. Detective Croce read the letter to Sergeant Reeves of the local police.
The record of the motion to suppress does not show the contents of the letter, but that of the trial indicates the letter was dated August 11, 1968, was addressed to defendant, refers to "that bag [and "that smoke"] I sent you," and explains methods of "cutting" the contents so as to enable defendant to "make well over $1,000" therefrom. It also tells defendant to send Domenick "the bread" (money) to a new address if he receives "the smoke." After the instructions for "cutting" the letter concludes: "Frankly, I shouldn't have to tell you all this because I know you have been out there just as long as I have."
The State's proofs on the motion to suppress were confined, essentially, to testimony by Sergeant Reeves that upon arrival at the Smith home on August 28, 1968, and before any search or seizure, he read and served both the search warrant and arrest warrant upon Smith, and placed him under arrest. On cross-examination, he said he asked Smith no questions, that he advised him of his "rights," and that he knew the package was in the car because he "saw it" (presumably en route to the house). The court refused to allow *126 defendant to cross-examine the witness concerning the details of the search on objection by the prosecutor that this would exceed the scope of the direct examination. At the trial, however, Reeves and other officers testified, in substance, that after Reeves placed Smith under arrest the latter inquired as to the reason, and Reeves told him they wanted the package he got from the postoffice. Smith told them it was in the car, opened the trunk and handed the package to them. Before this occurred, Reeves informed defendant of his Miranda "rights."
After getting the package the officers searched a bedroom and found the Domenick letter and two envelopes in a bureau drawer. One envelope contained the letter. The other envelope bore Domenick's name as sender of another (unidentified) letter. On cross-examination Reeves said he had not asked Smith where he kept his papers, but went directly to search the bedroom and found the letter. He did not search elsewhere in the house.
In denying the motion to suppress the judge (who also conducted the trial) held, responding to the respective contentions of defendant: (1) the search warrant was adequately supported by probable cause to believe marijuana was in the house; (2) the seizure of the package was valid under the warrant, the car not being "remote" from the house; alternatively, (a) defendant consented to the search of the car, and (b) the search of the car was lawful as incidental to the arrest; (3) the letter was properly seized in a search incidental to arrest because it was written "in connection with the traffic or the method of disposing of or selling this contraband."
Defendant poses the same search and seizure questions before us as he did below.

I. RESTRICTION OF CROSS-EXAMINATION ON MOTION TO SUPPRESS
At the outset of our consideration of the search issues it must be observed that the motion judge was ill-advised *127 in limiting cross-examination of Sergeant Reeves as to the details of the search conducted by him. Since the State was pursuing the alternative theory of justification for search and seizure of both the package and the letter as incidental to a valid arrest, independent of reliance on the search warrant, the burden of proof was to that extent on the State, see State v. Scrotsky, 39 N.J. 410, 414 (1963), and full examination of the police officer on the details of the search was highly appropriate, if not absolutely necessary. For reasons to be indicated in our discussion below as to the validity of seizure of the letter, there will have to be a remand to elucidate the reasons for and details of the search of defendant's private papers. As to the other questions of search law involved, however, since the factual versions of both sides came out at the trial, and both parties have cited and relied upon trial testimony as well as the proofs adduced on the motion, we will do likewise. In view of our conclusions, no prejudice will thereby be visited on defendant.[2]

II. VALIDITY OF THE SEARCH WARRANT
Defendant argues that the warrant is defective for lack of probable cause since the proofs at the trial show that the package of marijuana was, to the knowledge of the police including Detective Croce, affiant on the affidavit to secure the warrant, never in the defendant's home prior to the issuance of the warrant. However, the facts mentioned were not in the knowledge of the issuing judge. The judge may have deduced from the affidavit that it was probable that the package had already reached the home by virtue of the presumption of transmission of the mails in due course.
The problem presented peripherally implicates the issue, not here briefed by the parties, whether a search warrant will be invalidated on a showing that a statement or conclusion *128 by the police affiant was untrue to his knowledge. Our courts have not expressly passed on the controversial question whether, on a motion to suppress, proof of that nature will be entertained, although the discussion in State v. Burnett, 42 N.J. 377, 388 (1964), seems to imply a negative opinion. For the majority viewpoint see People v. Bak, 45 Ill.2d 140, 258 N.E.2d 341 (Sup. Ct. 1970); contra: People v. Alfinito, 16 N.Y.2d 181, 264 N.Y.S.2d 243, 211 N.E.2d 644 (Ct. App. 1965). In the present case the fact is indisputable from the record, without the necessity of further testimony, that the affiant knew at the time the warrant issued that the package was not at defendant's home but was still in the possession of the postal authorities, the plan of the authorities being to arrest defendant later in the day, concomitant with an intended delivery of the package to the home at that time. Moreover, from the affidavit itself it clearly appeared that the package had been diverted from the ordinary course of delivery of the mails by two inspections of its contents, so that a conclusion of probable antecedent delivery in the ordinary course of the mails was doubtful at best. Thus, on the total showing, and since other considerations lead us to conclude nevertheless for legality of the seizure of the drug, to which the warrant was specifically directed, we shall assume the invalidity of the search warrant for purposes of this opinion.

III. SEIZURE OF THE PACKAGE
The much broadened authority of the police to search motor vehicles on probable cause without warrant, under the most recent decisions of the United States Supreme Court and our own Supreme Court, leave us with no doubt that the taking of the package of marijuana was valid on that approach. See discussion infra. We therefore will not dwell at length on the other bases of justification for that seizure advanced by the State  consent of defendant and search incidental to arrest. The trial court's conclusion that *129 there was effective consent, while supported by the language of request and acquiescence furnished by the testimony of defendant himself ("did he mind" * * * "no, he didn't mind"), and see State v. King, 44 N.J. 346 (1965), is nevertheless cast into some doubt by the fact defendant may well have believed he was required to give up the package upon the official display of a search warrant. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
As to the theory of search of the car incidental to defendant's arrest in the house, this would seem vulnerable by plain analogy from the recent invalidations, even on a pre-Chimel[3] basis, of searches of a house purportedly incidental to arrest just outside the house, as not sufficiently within the "immediate vicinity" of the arrest. Shipley v. California, 395 U.S. 818, 819, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969); Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).
We conclude, however, that defendant's turning over of the package to the officers was constitutionally harmless in a Fourth Amendment sense, since they had the right, even without a warrant, to invade the car to look for the package on probable cause to believe that it contained marijuana, an instrumentality of crime and contraband, and that it was in the vehicle. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970).
In Chambers a car which the police had probable cause to believe was used in a service station robbery earlier that day was stopped by the police and its occupants arrested. The car was removed to the police station and there searched without a warrant, with the resultant discovery therein of loaded revolvers. In sustaining the validity of the search (without reliance upon the exception for searches incidental *130 to arrest; see Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964)), the court reviewed the law concerning warrantless searches of automobiles since Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), when it was first declared that because of its ready mobility a motor vehicle may be searched by law enforcement officers on the spot without a warrant on probable cause to believe the car contains articles the police are entitled to seize. In pondering the question whether the subsequent immobilization of the vehicle (involved in Chambers) in the hands of the police vitiated the "mobility" rationale for search without a warrant the court said:
On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. [399 U.S. at 52, 90 S.Ct. at 1981]
In the instant case there was under the evidence probable cause for the officers to believe the package was either in the house or in the car. Having been told by defendant before any search that the package was in the car,[4] probable cause as to location in the car was pinpointed and confirmed. The car remained a mobile conveyance, and, under the explicit rationale of Chambers, supra, the officers had the choice of holding the car while going for a search warrant expressly directed to the vehicle or searching it on the spot. Therefore, doing the latter would have been legally unexceptionable. See also State v. Boykins, 50 N.J. 73 (1967); State v. Barnes, 54 N.J. 1, 8-10 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970); State v. Hock, 54 N.J. 526, 534-535 (1969).
*131 The officers thus clearly having had the right without a warrant to enter the car to take the illicit package, even without the defendant's consent, it is immaterial that his consent may have been involuntary and that the entry cannot be defended as incidental to the arrest.

IV. SEARCH AND SEIZURE OF THE LETTER
We approach this issue on the basis of the State's alternative position that the letter was properly seized in a search of the house incidental to the arrest of the defendant.
Defendant's first attack upon this position is that the search of the bedroom where the letter was found was unreasonable as too remote from the locus of arrest  the room near the doorway  citing Chimel v. California, supra (395 U.S. at 763, 89 S.Ct. 2034). It was there held that the police could not, incidental to an arrest in one room of a dwelling, search another. However, the United States Supreme Court has not yet held that Chimel is to be applied retroactively, see Shipley v. California, supra (395 U.S. at 819, 89 S.Ct. 2053), and our own Supreme Court has decided against its retroactivity unless required by the United States Supreme Court. State v. Carter, 54 N.J. 436, 449 (1969), cert. den. 397 U.S. 948, 90 S.Ct. 969, 25 L.Ed.2d 130 (1970). The search and determination below having predated Chimel, we will not follow that decision in the present case, but rather the rules as to scope of search incidental to arrest reflected by prior law, principally exemplified by Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). See also State v. Doyle, 42 N.J. 334 (1964).
Under the cases last cited the search of the bedroom of the instant one-story house[5] was not unduly remote from the room where defendant's arrest had been effected. The search was therefore not prevented from being classified as incidental to the arrest for reasons of remoteness.
*132 We are presented with a more substantial issue in defendant's argument that the search of his private papers resulting in discovery and seizure of the letter was invalid under dicta in State v. Bisaccia, 45 N.J. 504, 515-516 (1965), and possibly under a caveat of the United States Supreme Court in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 302-303, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Bisaccia anticipated the later holding in Hayden abolishing the previous concept that a search for "mere evidence" of criminal complicity was an invasion of mixed Fourth-Fifth Amendment rights, and it held the rule not applicable to tangible objects. The Chief Justice there traced and refuted the previous notion that seizure of incriminatory objects, papers or otherwise, violated the owner's Fifth Amendment right not to incriminate himself (45 N.J. at 507-515) (note the cogent support of that analysis in the post-Hayden opinion by Judge Friendly in United States v. Bennett, 409 F. 2d 888, 896 (2 Cir.1969)). But the Chief Justice noted that the mere evidence rule had almost always been asserted in relation only to search and seizure of private papers (45 N.J. at 511-515), and he emphasized the significant difference between search of private papers and search and seizure of other tangible objects (such as were involved in Bisaccia) in terms of Fourth Amendment values, saying:
There is a marked difference between private papers and other objects in terms of the underlying value the Fourth Amendment seeks to protect. As we have said, private papers are almost inseparable from the privacy and security of the individual. To browse among them in search of anything inculpatory involves an exploratory search indistinguishable from the search under the general warrant which the Fourth Amendment intended to outlaw. See United States v. Kirschenblatt, 16 F.2d 202, 203, 51 A.L.R. 416 (2 Cir. 1926). Indeed, even a search for a specific, identified paper may involve the same rude intrusion if the quest for it leads to an examination of all of a man's private papers. Hence it is understandable that some adjustment may be needed, and presumably it is to that end that a search may not be made among a man's papers for a document which has evidential value alone. [at 515-516]
*133 In Warden, Md. Penitentiary v. Hayden, supra, notwithstanding its total abrogation of the "mere evidence" rule, as such, the court offered this monition:
The items of clothing involved in this case are not "testimonial" or "communicative" in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the Fifth Amendment * * *. This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure. [387 U.S. at 302-303, 87 S.Ct. at 1648]
Reflection upon the foregoing expressions of our highest state and federal courts raises two major problems in respect of paper searches: (a) manner, scope and extensiveness of the search, and (b) the possible survival of Fifth Amendment considerations in delimiting the kinds of papers which may be seized.
In respect of (b), however, regardless of the ultimate position the United States Supreme Court may take on the caveat quoted above, it is apparent that the writing here involved was not a testimonial utterance by defendant, and taking it and using it against him therefore not a compelled self-incrimination in the sense of the caveat in Hayden. In any event, moreover, there is no reason to believe there is or will be any change in the pre-Hayden principle that papers which are instrumentalities of crime are always seizable, whatever the incidental incriminating effect on their owner. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); State v. Bisaccia, supra (45 N.J. at 515); United States v. Bennett, supra (409 F.2d at 895-896). The letter here in question was clearly an instrumentality of the criminal enterprise of marketing marijuana in this State. To the extent that the search may be regarded as having been aimed at discovering such an instrumentality, the admonition in Bisaccia, quoted above, against searching a man's papers "for a document which has evidential value alone," is not pertinent.
*134 In relation to whether the last-mentioned observation in Bisaccia threatens the validity of the search if regarded as geared for discovering paper evidence of defendant's knowing possession of the drug, we think not. Bisaccia was written in the climate of continued and apparently unqualified subsistence of the "mere evidence" rule in the United States Supreme Court. But the conceptual foundation of the "mere evidence" rule was completely destroyed by Hayden. And an able post-Hayden opinion for the Second Federal Circuit compellingly argues against the development from the Hayden caveat of a principle for exclusion of seized papers on any Fifth Amendment rationale. United States v. Bennett, supra (409 F.2d, at 896-897).
Moreover, a considerable volume of authority, even after Hayden, countenances searches for papers and documents, incidental to arrest,[6] not only as to instrumentalities of crime, but as to such as are sought in the reasonable belief "that the evidence sought will aid in a particular apprenhension or conviction." See United States v. Bennett, supra (409 F. 2d at 897); United States v. Baratta, 397 F.2d 215 (2 Cir.1968), cert. den. 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968), reh. den. 393 U.S. 1045, 89 S.Ct. 613, 21 L.Ed. 2d 597 (1968); State v. Bullock, 71 Wash.2d 886, 431 P.2d 195 (Sup. Ct. 1967); People v. Crosslin, 251 Cal. App.2d 968, 60 Cal. Rptr. 309 (Ct. App. 1967). For a similar approach in search warrant cases, see United States v. Munroe, 421 F. 2d 644 (5 Cir.1970); Morales v. State, 44 Wis.2d 96, 170 N.W.2d 684 (Sup. Ct. 1969); Gurleski v. United States, 405 F.2d 253 (5 Cir.1968), cert. den. 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969), reh. den. 396 U.S. 869, 90 S.Ct. 37, 24 L.Ed.2d 124 *135 (1969); United States v. Zovluck, 274 F. Supp. 385 (S.D.N.Y. 1967).
Further, while forced by the then existing state of the federal cases to iterate the "mere evidence" limitation as to private papers, the court in Bisaccia did say: "Even as to private papers, this `mere evidence' limitation upon a search is not an easy line to defend * * *." (45 N.J. at 516).
Finally, some weight as to the Supreme Court's present intent may be given to the fact that in revising the practice rules in 1969 the court adhered, in the provision governing objects seizable pursuant to a search warrant, to the previous formulation: "* * * property, including documents, books, papers and any other tangible objects * * * constituting evidence of or tending to show any * * * violation [of the penal laws of this State]." Compare former R.R. 3:2A-2, 7, with present R. 3:5-2.
We consequently are confident that notwithstanding what was said in Bisaccia any general prohibition against seizure of papers or documents merely because they may evidence the owner's complicity in crime is no longer viable.
We thus arrive at a consideration of problem (a), supra, in relation to its effect upon the legality of the seizure of the letter. As noted in the quoted excerpt from Bisaccia, supra, strictly Fourth Amendment considerations properly forbid wholesale rummaging or browsing through a persons's papers in the unparticularized hope of uncovering evidence of crime. See Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed. 2d 728 (1969); United States v. Zive, 299 F. Supp. 1273 (S.D.N.Y. 1969) (both cases, search incidental to arrest); cf. People v. Martin, 49 Misc.2d 268, 267 N.Y.S.2d 404 (Sup. Ct. 1966) (search warrant). Emphatic reiteration of the same concern has recently been evidenced by the United States Supreme Court in Chimel, supra (395 U.S. at 767, 89 S.Ct. 2034), in citing and quoting from Judge Learned Hand's opinion in Kirschenblatt (also quoted in Bisaccia), condemning the rummaging "at will" through *136 private papers "in search of whatever will convict" (16 F.2d 202, 203).
Difficulties in reconciling the prohibition against "exploratory" or "rummaging" searches with the permission to look for and seize writings which are either instrumentalities of crime or reasonably believed likely to "aid in a particular apprehension or conviction," see United States v. Bennett, supra (409 F.2d at 897), confront the law enforcement officer attempting to do his job efficiently and yet to avoid wanton invasion of the privacy of the owner of the papers. The character of a paper ordinarily cannot be known until read or inspected, at least cursorily. Finding a paper within the seizable categories, reasonably believed to be present in the physical area of the premises lawfully searchable,[7] may well require perusal, to a varying degree, of innumerable documents before the target writing is found.[8]
Notwithstanding the complexity of the problem and the lack of direct and specific authority in the area, we must formulate reasonable and practicable criteria for admeasuring the legality of the procedure here used in the seizure of defendant's letter, giving due weight both to constitutional and law-enforcement considerations. We are, however, handicapped by the insufficiency of proofs in the record of the motion to suppress (or of the trial) to permit a determination as to just how extensive, random, detailed or needlessly exploratory, if at all, this search actually was. We know only *137 that there is a dispute as to whether the officers asked defendant where his private papers were; that some kind of a search of papers occurred, and that the letter was found in a bedroom. Nor can we on this record make a definitive finding that the purpose of the officers was only to search for communications from Vietnam respecting an impending shipment of drugs to defendant from someone in that country, albeit one might well so surmise. If that be the fact, the officers should so testify. A search limited to that objective would clearly be permissible, regarded as a quest for either an instrumentality of crime or for evidence reasonably believed to be on the premises and to have evidential capacity for aiding in defendant's conviction on the charge for which he had been arrested. See United States v. Bennett, supra (409 F.2d at 897).
If the totality of the evidence indicates that the officers' purposes and methods of search were so guided and that the physical areas covered, the quantum of papers examined and the extent of perusal engaged in were no more than was reasonably necessary to find and take lawfully seizable papers, the search and seizure of the letter should be adjudged valid and free of the connotation of an "exploratory search" in the invidious sense.
The matter will accordingly be remanded for a hearing and detailed findings of fact and conclusions on the issues outlined relative to the search resulting in the seizure of the letter.

V. ALLEGED DISQUALIFICATION OF JUDGE ON MOTION TO SUPPRESS
Defendant contends the judge who heard and denied the motion to suppress was disqualified because he issued the search warrant. He cites R. 1:12-1(d), disqualifying any judge who "has given his opinion upon a matter in question in the action." The rule is not apposite. The action in issuing the warrant is ex parte and merely appraises *138 the prima facie showing of probable cause. The motion proceeding is adversarial, and the judge adjudicates all questions of law and fact posed on the challenge of the validity of the warrant. Note also that the rule recites that paragraph (d) "shall not prevent a judge from sitting because he has * * * given his opinion on any question in controversy in the pending action in the course of previous proceedings therein."
It is significant that notwithstanding the regular practice since adoption of the search warrant procedure rules in 1963 for issuing judges to sit on motions to suppress, neither the cited rule nor that dealing with procedure on motions to suppress was changed by the 1969 rules revision in any respect here pertinent.

VI. ADMISSIBILITY OF THE LETTER AS AGAINST THE HEARSAY RULE
Finally, defendant contends there was fatal error in the admission of the letter over his objection on hearsay grounds. The State successfully defended its proffer on the ground the letter was part of the res gestae and was offered to show knowledge by defendant of the contents of the package he arranged to have picked up at the postoffice and turned over to him. We are satisfied that the letter was not incompetent as hearsay since it was not offered to establish the truth of the statements of fact contained therein, and defendant made no request for limiting instructions to the jury should his objection not be sustained. When a fact relating to an out-of-court declaration is relevant to a fact in issue without regard to the truth of the fact declared, admission of the declaration does not violate the hearsay rule. 6 Wigmore, Evidence (3d ed. 1940), § 1788 at 234. See Evidence Rule 63; State v. Stilwell, 97 N.J. Super. 424, 428 (App. Div. 1967). Here defendant's receipt and retention of the letter, independently of the truth of the factual assertions therein, tended to show defendant had reason to *139 believe Burton Domenick was sending him marijuana from Vietnam and expected him to market it and share the proceeds with him.
Examples of similar permitted uses of out-of-court declarations to establish incriminating knowledge by a defendant are common. See McCormick, Evidence (1954), § 228 at 464-465; 31A C.J.S. Evidence § 257, at 677; Brown v. United States, 403 F.2d 489 (5 Cir.1968), cert. den. 397 U.S. 927, 90 S.Ct. 932, 25 L.Ed.2d 106 (1970); United States v. Grow, 394 F.2d 182 (4 Cir.1968), cert. den. 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968); People v. Tahl, 65 Cal.2d 719, 56 Cal. Rptr. 318, 423 P.2d 246 (Sup. Ct. 1967), cert. den. 389 U.S. 942, 88 S.Ct. 301, 19 L.Ed.2d 294 (1967).
In view of the foregoing conclusion we need not pass upon the State's alternative position that the letter is admissible as an exception to the hearsay rule  i.e., a statement of the declarant's state of mind in respect of plan, motive or design. Evidence Rule 63(12); cf. Hunter v. State, 40 N.J.L. 495, 541 (E. & A. 1878). The argument is that the letter shows Domenick's state of mind as including defendant in his scheme, and that that fact, coupled with defendant's receipt and retention of the letter, later acceptance of the package from the post office through another, and the temporary placement of it in defendant's locked car trunk, in totality bespeak guilty participation in the scheme.
For the reasons stated in Part IV of this opinion the matter is remanded to the County Court for a hearing, findings of fact and conclusions consistent with the views there set forth. These should be completed and returned to this court within 45 days. We retain jurisdiction. The parties may apply to the clerk thereafter for instructions as to further briefs and/or argument.
NOTES
[1] At the trial defendant testified Domenick was a relative of his wife who had visited him in July 1968 and proposed sending him marijuana; that he then absolutely forbade it, but suggested Domenick send his daughter a doll from Vietnam.
[2] But this case is not to be taken as a precedent that the validity of a search can generally be tested on facts not adduced on a motion to suppress.
[3] Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), restricting searches incidental to arrest to the arrestee's person and the area within his immediate reach. And see infra.
[4] Defendant makes no Miranda argument on this appeal.
[5] The record does not indicate the number of rooms in the house, but there is every likelihood it was a dwelling of moderate size.
[6] The restrictive effect of Chimel v. California, supra (395 U.S. 762, 89 S.Ct. 2034) on searches incidental to arrest should be substantially to eliminate future "exploratory" searches, whether of papers or otherwise, in that category. But, as noted, this case is being decided on pre-Chimel principles.
[7] Even if, e.g., only within a multi-drawered desk within the reach of a person arrested, and therefore within the range of permissible search incidental to arrest under Chimel, supra.
[8] The inherent complexity of this problem has inspired the proposal by the Council of the American Law Institute and its Reporter on the proposed Model Code for Pre-Arraignment Prodecure of a procedure for identification of documents subject to seizure under a warrant and for a hearing before a judicial officer in the case of intermingled documents having the purpose of confining the seizure to authorized documents with a minimum of perusal of unauthorized documents. A.L.I. Model Code of Pre-Arraignment Procedure, (Tent. Dr. No. 3, 1970), § SS 2.05. Similar procedures are prescribed for searches conducted incidental to arrest. Id., § SS 3.01(3).