# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3067-23

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL FIGUEROA,
a/k/a FIGGZ,

      Defendant-Appellant.

_____

      Submitted March 4, 2026 – Decided May 26, 2026

      Before Judges Mayer and Jacobs.

      On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment Nos. 23-06-0557 and 23-06-0558.

      Jennifer N. Sellitti, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

      Jennifer Davenport, Attorney General, attorney for respondent (Kaili E. Matthews, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Michael Figueroa appeals from his convictions for aggravated sexual assault and narcotics-related crimes, contending the trial court erred in denying his motion to suppress digital evidence seized from his cellular phone. We affirm.

I.

In March 2023, Detective Sergeant Edward Zienowicz of the Morris County Prosecutor's Office's Special Enforcement Unit received information from a confidential informant (CI) regarding drug distribution. The CI informed Zienowicz an individual named "Figs" was selling heroin and cocaine from his residence, using his cell phone to facilitate sales. The CI provided Figs's home address and cell phone number. Using its databases, law enforcement matched the address provided to defendant. A search of New Jersey Motor Vehicle Commission records produced a photograph of defendant, which was shown to the CI, who positively identified him as the individual selling narcotics.

Police conducted three controlled buys. First, during the week of March 13, 2023, the CI, in Zienowicz's presence, called defendant at the phone number previously provided to law enforcement. The CI spoke with defendant about buying heroin. Defendant instructed the CI to meet defendant at his residence, which matched the address the CI had given to police. The CI then engaged in

2

a hand-to-hand transaction with defendant. Afterward, the CI met police at a predetermined location and turned over the suspected heroin.

In the following weeks, the CI engaged in two additional controlled buys following the same pattern. Police confirmed the phone number used to arrange the three controlled buys matched defendant's number. Based on this information, Zienowicz applied for a search warrant to seize evidence related to narcotics possession and distribution. In his supporting affidavit, Zienowicz stated:

> based upon my training, education, and experience in the field of narcotics and CDS [controlled dangerous substance] distribution conspiracies, CDS distributors are known to use cellular telephone[] devices to communicate with other distributors and CDS buyers to facilitate CDS transactions. CDS distributors often use their cellular telephone devices to communicate via text messages, phone calls and third-party applications, in relation to their distribution schemes . . . .

Because the CI arranged drug transactions with defendant telephonically, Zienowicz requested the warrant include the search of any cell phones recovered. He believed cell phones on defendant's person or in his close proximity recovered during the search would have been used in furtherance of CDS crimes.

Explaining why the cell phone's entire contents would need to be searched,

A-3067-23

Zienowicz certified:

> modern cellular telephone devices may be utilized for the storage of telephone numbers, messages, photos, and other information, and automatically store information regarding recent telephone calls, and may be utilized to store memoranda and capture information regarding messages. Cellular telephone devices, being a modern storage device, contain significant quantities of information that would be evidential in this criminal prosecution. Additionally, I believe such evidence will help to identify additional individuals who may have conspired to commit the foregoing offenses, among other items of evidential value in connection with this investigation. Therefore, I am respectfully requesting to seize, charge[,] and search, including a full computer forensic search thereof, of any and all cellular telephone devices, reasonably believed to have been used in furtherance of the aforementioned crimes, found on or in close proximity to [defendant] . . . and his residence . . . for all identifying information located on this instrument, as well as all electronic data, communications and information stored therein . . . .

He further requested authorization to search all described items on the seized cell phones that may be "hidden, erased, compressed, password[-]protected, encrypted data[,] or encrypted volumes." Additionally, Zienowicz explained that the process of searching data on cell phone devices was technically complex and requested a sufficient time frame ("within 90 days of receipt") to conduct the search to ensure integrity of the device, data, and the search itself.

4

A-3067-23

Judge Ralph E. Amirata authorized the requested warrant on April 17. In executing the search of defendant's cellular photo album, police discovered two videos and several images depicting a minor, later identified as M.J., naked while being sexually assaulted.[1] With this evidence, police applied for a second warrant to search the phone for any further Child Sexual Abuse Material (CSAM). A second judge approved that warrant. The subsequent search revealed more CSAM and metadata confirming the videos and photographs were original to defendant's phone.

On June 28, 2023, a Morris County grand jury indicted defendant for: second-degree unlawful possession of a weapon during a CDS offense, N.J.S.A. 2C:39-4.1(a) (counts one and two); third-degree possession of CDS (heroin and cocaine), N.J.S.A. 2C:35-10(a)(1) (counts three and four); third-degree possession with intent to distribute CDS (heroin and cocaine), N.J.S.A. 2C:35-5(a)(1), (b)(3) (counts five and six); fourth-degree possession with intent to distribute drug paraphernalia, N.J.S.A. 2C:36-3 (count seven); and second-degree certain persons not to have a firearm, N.J.S.A. 2C:39-7(b)(1) (counts eight and nine).

The grand jury returned a second indictment for CSAM-related charges:

---

[1] We use initials to protect the child's privacy. R. 1:38-3(c)(12).

A-3067-23

first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (counts one through four); second-degree sexual assault, N.J.S.A. 2C:14-(2)(b) (counts five and six); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), (a)(2) (counts seven and eight); first-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(3) (count nine); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(4) (count ten); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b)(iii) (count eleven).

Defendant moved to suppress the digital evidence recovered from the search of his cell phone, challenging the narcotics warrant and subsequent CSAM warrant. In a January 17, 2024 oral decision, Judge Amirata denied defendant's motion, finding both warrants supported by probable cause.

The judge found the narcotics warrant was "supported by an affidavit of the investigating detective" that "described with particularity the places . . . and the objects which were to be searched." In reaching his decision, the judge distinguished the facts before him from those in State v. Missak, 476 N.J. Super. 302 (App. Div. 2023). He observed Missak is "an intensely fact specific case[,]" concerning "a warrant authorizing the search of the entire cellular telephone with [a] limitless time line."

In contrast to <u>Missak</u>, Judge Amirata found Zienowicz "detailed at length his training and experience and gave an extensive account of control buys which had already been conducted."  Further, the warrant sought evidence limited to an established time frame and, thus, presented facts "substantially different" than the facts in <u>Missak</u>.  The judge elaborated, "<u>Missa[]k</u>, in its finding did not hold that a warrant for a search of all data of a phone is per se invalid.  It merely found that probable cause . . . necessarily needs to be outlined in the search warrant and the scope of the search warrant needs to be supported for the breadth of same."

The judge found the search was reasonable and the CSAM discovered on defendant's phone was admissible under the plain-view exception to the Fourth Amendment's warrant requirement.  Specifically, the judge found Zienowicz searched defendant's phone pursuant to the narcotics warrant and "inadvertently stumbled upon CSAM material," clearly indicative of criminal activity.  He concluded, "[b]ased on the evidence identified from the plain view of the first search, a warrant authorizing a second extensive search for CSAM material was necessary and supported by probable cause."  The judge thus denied defendant's suppression motion and entered an accompanying order.

A-3067-23

That same day defendant entered into a plea agreement. Pursuant to its terms, he pleaded guilty to count six (possession of CDS with intent to distribute) and count eight (certain person not to have a firearm) of the CDS indictment and count one (aggravated sexual assault) of the CSAM indictment. In exchange, the State agreed to recommend twenty-three years' imprisonment with no period of parole eligibility pursuant to the Lunsford Act, N.J.S.A. 2C:14-2, for the sexual assault charge, to run concurrent to a seven-year imprisonment term for the certain persons charge and a four-year imprisonment term for the possession with intent to distribute charge. In May 2024, Judge Amirata sentenced defendant in accordance with the plea agreement and imposed the mandatory fines and penalties.

Defendant appealed, raising the following arguments:

POINT I

THE TRIAL COURT SHOULD HAVE GRANTED THE MOTION TO SUPPRESS EVIDENCE BECAUSE THE WARRANT LACKED PROBABLE CAUSE TO ALLOW POLICE TO SEARCH THE PHOTO ALBUM ON DEFENDANT'S CELL PHONE.

POINT II

THE TRIAL COURT SHOULD NOT HAVE HEARD THE MOTION TO SUPPRESS BECAUSE THE SAME JUDGE ISSUED THE WARRANT IN THE FIRST INSTANCE. (Not raised below).

A-3067-23

## II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). This is because the trial court had the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Thus, appellate courts should reverse only when the trial court's determination is so clearly mistaken that the interests of justice demand intervention and correction." Gamble, 218 N.J. at 425 (internal quotation marks omitted) (quoting Elders, 192 N.J. at 244).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). "Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing Gandhi, 201 N.J. at 176).

Such legal conclusions encompass possible violations of the Fourth Amendment to United States Constitution and Article I, Paragraph 7 of our State Constitution. See Missak, 476 N.J. Super. at 314 (holding the validity of a

search warrant is a "purely legal" question) (internal quotation marks and citation omitted). Even in the Fourth Amendment context, "[w]e accord substantial deference to a trial court's determination that there was probable cause to issue a warrant." State v. Marshall, 199 N.J. 602, 612 (2009) (citing State v. Jones, 179 N.J. 377, 388-89 (2004)).

CDS Warrant

In his merits brief, defendant states, "[t]he overbreadth of the first CDS warrant is the subject of this appeal." We thus focus our analysis on that warrant.

Both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution provide, "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." Marshall, 199 N.J. at 610 (quoting N.J. Const. art. I, ¶ 7). "Thus, a warrant should not issue unless the court is satisfied that there is 'probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" Ibid. (quoting State v. Sullivan, 169 N.J. 204, 210 (2001)). "The Fourth Amendment governs not only physical searches but also electronic interception of phone

conversations." State v. Feliciano, 224 N.J. 351, 367 (2016).

In the CI context, the court issuing the warrant must determine whether the tip "establishes probable cause" and "must consider the 'veracity and basis of knowledge' of the informant as part of its 'totality' analysis." Jones, 179 N.J. at 389 (quoting State v. Novembrino, 105 N.J. 95, 123 (1987)). "An informant's basis of knowledge is sufficient 'if the tip itself relates expressly or clearly how the informant knows of the criminal activity.'" Ibid. (quoting Sullivan, 169 N.J. at 213). "The absence of such explicit information within the tip itself, however, is not fatal if 'the nature and details revealed in the tip . . . imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source.'" Id. at 389-90 (alteration in original) (quoting Sullivan, 169 N.J. at 213).

"'Independent corroboration is necessary to ratify the informant's veracity and validate the truthfulness of the tip' and is considered 'an essential part of the determination of probable cause.'" Id. at 390 (quoting State v. Smith, 155 N.J. 83, 95 (1998)). "However, if the informant's tip fails to demonstrate sufficient veracity or basis of knowledge, a search warrant issued on the basis of the tip may still pass muster if other facts included in a supporting affidavit justify a finding of probable cause." Ibid. (first citing Sullivan, 169 N.J. at 214; and then

citing Novembrino, 105 N.J. at 121-22).

In other words, a CI's tip is one factor among others to be considered in the totality of the circumstances analysis:

> [T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
>
> [Ibid. (alteration in original) (internal quotation marks omitted) (quoting Smith, 155 N.J. at 93).]

"The particularity requirement is uncomplicated. Generally[,] it mandates that 'the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'" Marshall, 199 N.J. at 611 (quoting Steele v. United States, 267 U.S. 498, 503 (1925)).

We discern no error in Judge Amirata's decision to authorize issuance of the CDS search warrant. Under the totality of the circumstances, there was probable cause defendant possessed and distributed narcotics. The CI's tip contained explicit information detailing defendant's identity, residence, and phone number, and how defendant was purportedly involved in drug transactions, establishing the CI's "veracity and basis of knowledge." Jones, 179 N.J. at 389. Law enforcement independently corroborated this information by

12

searching databases to confirm defendant's address and identity. See id. at 390.

Based on this information, law enforcement was able to conduct three controlled buys from defendant with the CI's assistance, further establishing probable cause. See State v. Desir, 245 N.J. 179, 186 (2021) (affirming that a CI's controlled purchase of narcotics from the defendant formed probable cause for the issuance of a search warrant for the defendant's home).

The supporting affidavit recounted these facts, establishing a "fair probability" defendant was in possession of and distributing CDS. Marshall, 199 N.J. at 610. The affidavit described specific evidence to be searched, namely, defendant's phone. Zienowicz also described how data is stored on a cellular phone, how it may be hidden or deleted, and why a precise time frame was foreclosed. He nonetheless established to the satisfaction of the trial court and this court "within the four corners of the supporting affidavit" that "evidence of a crime w[ould] be found in a particular place." Id. at 610-611. Consistent with our holding in Missak, where, as here, a certification "provide[s] sufficient facts supporting the expansive search warrant for all the data and information on the seized cellular phone," a warrant that "allows a search without limitation of all the phone's contents, information, and data" is sufficiently particularized. 476 N.J. Super. at 322. We thus perceive no error in Judge Amirata's

determination of probable cause or in the scope of the CDS warrant.

CSAM Warrant

Although defendant challenges only the purported overbreadth of the CDS warrant, we nonetheless assess the validity of the CSAM warrant because it was generated based on observations made in execution of the CDS warrant. "A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." Gamble, 218 N.J. at 425 (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). "The State bears the burden of demonstrating that a warrantless search is justified by 'one of the "few specifically established and well-delineated exceptions" to the warrant requirement.'" State v. Bogan, 200 N.J. 61, 73 (2009) (quoting State v. Frankel, 179 N.J. 586, 598 (2004) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978))).

One such exception is the plain-view doctrine. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). To justify a warrantless search under this doctrine, "the State must prove: (1) 'the officer [was] lawfully . . . in the area where he observed and seized the incriminating item or contraband'; and (2) 'it must be immediately apparent that the seized item is evidence of a crime.'" Id. at 20-21 (alterations in original) (quoting State v. Gonzales, 227 N.J. 77, 101

(2016)).

We determine Judge Amirata did not err in concluding the CSAM from the search of defendant's phone pursuant to the CDS warrant was lawfully obtained under the plain-view doctrine and that the second search warrant was properly issued. Because the CDS warrant was properly issued, law enforcement lawfully searched defendant's phone, satisfying the first prong of the doctrine. The CSAM material discovered under the plain-view doctrine as part of law enforcement's valid search conducted pursuant to the CDS warrant was immediately indicative of a crime, satisfying the doctrine's second prong.

Based on this evidence, the second warrant was properly issued. The CSAM established evidence of a crime, aggravated sexual assault, forming the requisite probable cause for issuance of the second search warrant. Marshall, 199 N.J. at 611. Thus, the additional CSAM obtained from the second search warrant was lawfully obtained.

We briefly address defendant's remaining argument that Judge Amirata should be disqualified from hearing the motion to suppress because he reviewed and signed the CDS warrant. The argument is without merit. We rejected the same contention in State v. Smith, noting "[t]he action in issuing the warrant is ex parte and merely appraises the prima facie showing of probable cause," while

15

"[t]he motion proceeding is adversarial, and the judge adjudicates all questions of law and fact posed on the challenge of the validity of the warrant." 113 N.J. Super. 120, 137-138 (App. Div. 1971).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3067-23